29 C.C.P.A.(Patents)

**OLD JOE DISTILLING CO. v. ESBECO DISTILLING CORPORATION.**

**Patent Appeal No. 4506.**

Court of Customs and Patent Appeals.

Dec. 1, 1941.

John F. Brezina, of Chicago, Ill., and Robert I. Dennison, of Washington, D. C. (Bryant Buckingham, of Chicago, Ill., of counsel), for appellant.

A. W. Murray, of Chicago, Ill., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Commissioner of Patents affirming that of the Examiner of Interferences sustaining the opposition of Esbeco Distilling Corporation (hereinafter generally referred to as opposer) to the application by Old Joe Distilling Company (hereinafter generally referred to as applicant) for registration of the notation "Old Joe" as a trade-mark for whiskey.

Applicant is a corporation organized under the laws of the State of Kentucky, having its principal office at Lawrenceburg in Anderson County of that State. The articles of incorporation bear date of July 28, 1933. A prior corporation having the same name, Old Joe Distilling Company, Inc., which operated in the same county but at a different location from that now occupied by applicant, was organized in 1912 and dissolved in 1924. As will appear from facts hereinafter recited, applicant bases its claim of priority, in part, upon the use of the mark by such prior corporation.

Opposer is a corporation organized under the laws of the State of Delaware, having its principal office at Stamford, Connecticut. It seems to have been organized early in 1933 under the name Esbeco Beverage Company which name was later changed, by amendment to the charter, to Esbeco Distilling Corporation, the amendment being made after it became legal to manufacture whiskey.

Both companies are engaged in distilling, manufacturing, rectifying and selling whiskey. So, the goods of both are the same in character, and the ultimate question to be determined is that of priority.

Opposer has no registration in the United States Patent Office, nor any application for registration, but relies upon claimed prior use to establish ownership.

It does not seem to be questioned that opposer made use of the mark as early as February 27, 1934, while the earliest use of it awarded applicant by the tribunals of the Patent Office was in August 1934 when a sale was made. It is not conceded by counsel for applicant that this was its first sale, but it appears that it did not begin the manufacture of whiskey until May 10, 1934. So, if applicant must be confined to its use of the mark upon whiskey manufactured by itself, opposer was clearly the prior user. Applicant, however, has endeavored to trace title to the mark through use by alleged predecessors as more particularly recited hereinafter.

In its application for registration applicant stated: The trade mark has been continuously used and applied to goods in the business of applicant and its predecessor since 1818.

There is no substantial evidence of use of the brand or name, "Old Joe," earlier than about 1886, but it seems to be fully established that whiskey manufactured at a distillery in Anderson County, Kentucky, owned at different times by different individuals, was sold under that brand or name during many years preceding 1912.

In 1912, as has been stated (following a fire which destroyed a part of the plant), a corporation was organized under the laws of Kentucky, having the name of Old Joe Distilling Company, which acquired the plant from its individual owners, and proceeded to manufacture whiskey, marketing it under the brand, "Old Joe." The manufacture continued until 1917 when, on account of national prohibition, distilling was discontinued.

It appears that sometime in 1920 the assets of the original Old Joe Distilling Company, including the stock of whiskey then on hand (some sales permissible by law having been made from the plant after manufacture ceased in 1917) were sold to one Gratz B. Hawkins, he having about that time become president of the original company (whose existence as a legal entity continued, according to the finding of the Commissioner of Patents until November 8, 1924, when it was dissolved) and who is president of the applicant company; that after the sale to Hawkins the whiskey was retained in the warehouse at the plant until May, 1923, and some sales were made from the plant under the law and regulations then existing; that in May, 1923, such of the stock of whiskey as remained in the company's warehouse, 527 barrels, was shipped to Louisville, Kentucky, and there stored, or concentrated, in a bonded warehouse of the Louisville Public Warehouses Company, in conformity with the requirements of the National Prohibition Act, 27 U.S.C.A. § 1 et seq.; that negotiable certificates of ownership, or warehouse receipts, were issued to the owners of the whiskey; that the whiskey was bottled from time to time under supervision of the warehouse authorities and withdrawn upon permits duly granted in conformity with law, and that labels showing the whiskey to be the product of the Old Joe Distilling Company were placed upon the bottles, as well as other labels bearing the notation "Old Joe Whiskey."

It is the contention of applicant, in substance, that title to the brand "Old Joe" was acquired by Gratz B. Hawkins along with the properties and good will transferred to him in 1920 by the corporation of which he then became president; that the brand or name was used by him in making sales from the company's plant and in such dealings as were transacted later through the public warehouse, and that the brand was conveyed to applicant after its organization in 1933, along with whatever assets or properties of the first corporation Hawkins conveyed at that time.

The Examiner of Trade-mark Interferences took the view that Hawkins did not acquire title to the mark in question. In the course of his decision after analyzing and quoting certain of the testimony he said:

"After a consideration of applicant's proofs it is deemed to appear that Hawkins merely purchased some buildings and a part (or perhaps all) of the stock of whiskey then on hand from the corporation of which he was president. Such purchase was in connection with the dissolution of the corporation and quite obviously this mere dissolution could give him no title to the mark in question.

"Having acquired no title to the mark 'Old Joe' from the former Old Joe Distilling Company, and since he personally made no such use of the mark as to create any rights thereto in himself, it follows that he could not make a valid assignment thereof."

In the opinion of the commissioner it was unnecessary to pass upon the question of what rights Hawkins acquired in the mark.

After reciting certain facts and quoting certain matter (a part of which we quote hereinafter), he said, inter alia:

"Assuming, without deciding, that Mr. Hawkins, as he seems to contend, acquired title to the mark from the original Old Joe Distilling Company when he purchased its stock of whisky, and that his sale of the warehouse receipts in exchange for which the whisky was released to purchasers, constituted use by him of the trademark, proof still was required of a valid transfer from Mr. Hawkins to applicant. It was said by the Court of Customs and Patent Appeals in Kelly Liquor Co. v. National Brokerage Co., 102 F.2d 857, 26 C.C.P.A. [Patents] 1110:

"But a trade-mark can be transferred only in connection with the transfer of an existing business. A trade-mark is treated as merely a protection for good will, and is not the subject of property except in connection with an existing business."

"Mr. Hawkins did not pretend to transfer an existing business to applicant. What he did undertake to transfer was a thing figmental. It was not his business of trading in negotiable warehouse receipts. It was merely the purported good will of a 'distillery business' that had never existed. Mr. Hawkins had never engaged in that business personally, and prior to 1920 he had not even been connected with his alleged assignor, which discontinued its distillery business in 1917. It follows that his quoted communication and his testimony in relation thereto amounted to nothing more than abandonment of any interest he might have possessed in the trademark, and conferred upon applicant no rights other than those resulting from such abandonment and its own subsequent adoption and use of the abandoned mark."

We have carefully examined all the competent evidence introduced on behalf of applicant, consisting of the testimony of witnesses and various documents introduced as exhibits.

We are of opinion that it was established by the testimony of Mr. Edmund H. Bacon, vice-president of the Louisville Public Warehouses Company, having executive and co-managerial duties, that the whiskey transferred from the original Old Joe Distilling Company's plant was stored in the public warehouse at Louisville in the name of the company, and that the company's name was used in the dealings relative to the whiskey conducted with and through the warehouse both before and after the final dissolution of the company in 1924. It is not clear whether the barrels containing the whiskey bore trademark labels at the time of their storage but apparently they were stenciled or marked in some manner indicating that the product was that of the Old Joe Distilling Company, and after the whiskey was bottled labels were placed on the bottles showing the whiskey to be the product of that company and when withdrawn from the warehouse the bottles bore such labels, as well as labels bearing the notation "Old Joe Whiskey."

Unhappily for applicant, however, the testimony given by Mr. Hawkins is lacking in definiteness and clearness upon some of the important phases which must be considered in determining the ultimate issue. It is not clear just what he acquired in 1920 after he became president of the first Old Joe Distilling Company, nor in what capacity he acquired whatever he then did acquire. Parts of his testimony would indicate that he became the outright purchaser of the entire capital stock of the original company, together with its physical assets (including at least a part of the whiskey), the goodwill and the brands, while other parts indicate that he took the properties over in what may be described as being in the nature of a trusteeship for the purpose of winding up the business.

Another matter not made clear by the testimony of Hawkins is that of the actual ownership of the whiskey which was transferred from the warehouse of the first Old Joe Distilling Company to the Louisville Public Warehouse in May, 1923. He testified at one point that he had bought all the whiskey on hand in 1920, and "sold a great deal of it there at the old plant." With respect to such as was shipped to and stored in the public warehouse for which negotiable certificates of ownership, or warehouse receipts, were issued, however, he testified "I know I owned a good deal of it. The other was owned by different people."

There is nothing of record to show who the "different people" were that owned the "other," and any conclusion with respect thereto would be purely speculative.

It must be borne in mind, of course, in considering the issues here that the respective Old Joe Distilling Companies were legal entities, separate and apart from Mr. Hawkins, considered as an individual, although he was for a time president of the first and is now (or was at the time his testimony was taken) president of the applicant company.

It must also be borne in mind that what was actually sold, whether by the company or by Hawkins individually, consisted of negotiable certificates, or warehouse receipts, and not of the whiskey per se. Those receipts could be purchased by any one, and under proper permits the whiskey represented by them could be withdrawn from the public warehouse. As of course, the final dissolution of the original Old Joe Distilling Company in 1924 eliminated it as a legal entity, and of necessity all transactions with regard to the whiskey had thereafter, in a legal sense, must have been by individuals.

■ Without pursuing further the situation relative to the transactions through the warehouse, we are compelled to conclude that whatever may have been Mr. Hawkins' relation to the business and whatever rights in the brand he may have acquired and whatever the status of such rights before and after the dissolution of the original company, there is no satisfactory evidence of his having conveyed to the new corporation, applicant here, any properties which carried the brand ° or trade-mark with it.

■ The mere sale of the certificates of ownership which was the actual business in which Mr. Hawkins was engaged during that period would not, as we view it, carry trade-mark rights to the purchasers, but, even if it did, we do not find any evidence that he ever conveyed any certificates or any of the whiskey made by the first Old Joe Company to the new company.

Applicant has relied upon what purports to be a copy of "excerpts from minutes of directors meeting of Old Joe Distilling Company duly held on September 12, 1933," embracing a proposal made to the new company by Mr. Hawkins, one of which excerpts reads as follows:

"There has been presented to you by Mrs. Agnes F. Brown a proposal providing for the conveyance to you of certain real property and the grant to you of a certain easement, in consideration of the issuance and delivery by you of 49,500 shares of your common stock, and the undersigned agrees that when and as said proposal shall be accepted by you, he will assign and transfer to you *the goodwill now owned by him and formerly connected with the distillery business operated by him in Anderson County, Kentucky,* (which business was suspended on or about the year 1917 because of the amendment to the United States Constitution, prohibiting the sale of intoxicating liquors), *together with a list of customers of said business, formulae, trade-marks and brands owned in connection therewith, including the trade-mark and brand of "Old Joe" used on whisky sold by said business.* (Italics ours.)

Another of the excerpts states that "The foregoing proposal is hereby accepted this 12 day of September, 1933," and Mr. Hawkins testified orally that the transaction referred to was consummated about that time, by which it is supposed he meant that he, about that time, transferred to the new company what he had proposed to assign and transfer to it.

It may be said that introduction of the foregoing excerpts were objected to by counsel for opposer on the ground that they were not the originals, and the commissioner expressed the view that the objection was sound. By reason of a stipulation of counsel for the use of copies, appearing of record, we have treated them as competent evidence, but they do not sustain applicant's position.

By reference to the italicized matter in the proposal so made it will be seen that Mr. Hawkins did *not* propose to convey to the new company any whiskey manufactured by the original company which may have been in the public warehouse at that time, nor any character of goods upon which the trade-mark appeared. What he did propose to convey, so far as the trade-mark is concerned, seems to have been properly described by the commissioner as a "thing figmental."

There is testimony by both Mr. Bacon and Mr. Hawkins indicating that some of the old stock of whiskey was in the public warehouse at the time the new company was organized, and that it was withdrawn after that time by different persons. One withdrawal in particular is emphasized by applicant. It appears to have been made February 6, 1934, which antedated the use

of the mark of opposer and is relied upon by applicant to establish prior use. One difficulty about this transaction, so far as applicant is concerned, is that there is no showing in the record that the whiskey withdrawn in this shipment, or even any certificate or warehouse receipt representing it, was ever conveyed to applicant by Hawkins or anyone else.

We have given careful consideration to the briefs and arguments of applicant's counsel, but are of opinion that, upon the facts presented, the commissioner reached the only conclusion permissible under the law governing trade-mark registrations, and his decision is, therefore, affirmed.

Affirmed.

BLAND, J., dissents.